UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES O'CONNOR,

        Plaintiff,

                                  Case No.:  04-CV-74717-DT

vs.

                                  HON. JULIAN ABELE COOK, JR.
                                  MAG. JUDGE WALLACE CAPEL, JR.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant,

_____/

## REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

## II.     REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB].  Plaintiff signed his application for benefits on July 22, 2002, alleging that he has been disabled and unable to work since January 23, 2002,[1] due to carpal tunnel syndrome [CTS].  (TR 47-49, 56).  Benefits were denied initially on August 22, 2002.  (TR 31-34).  A de novo hearing was held on March 26, 2004, before

---

[1]However, on Plaintiff's Report Adult Disability, he stated that he became unable to work on February 24, 2002.  (TR 56).

1

Administrative Law Judge [ALJ] Larry Temin. (TR 203-26). In a decision dated April 24, 2004, the ALJ found that Plaintiff could perform a limited range of sedentary work. (TR 18-26). Accordingly, Plaintiff was found not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on October 27, 2004. (TR 5-8). The Plaintiff has commenced this action for judicial review.

### A.    PLAINTIFF'S TESTIMONY

Plaintiff testified that he was born on November 14, 1958, and was forty-five years old at the time of the hearing. (TR 207). He stated that he is six foot, one inch tall, and weighs two hundred and thirty pounds. Id. He reported that he is right-handed and married. (TR 207-08). He testified that he lives in a house with his wife and eighteen-year-old daughter. (TR 208).

Plaintiff stated that he completed high school and had training through programs at his previous employment doing electrical work. (TR 208-09). He stated that he is able to read and write as well as do simple arithmetic. (TR 209). He testified that he had never been in the military. Id. He stated that he receives six hundred and twenty-seven dollars a week in worker's compensation. Id. He reported that he has been receiving same since August 2001, and also has health insurance coverage. Id.

Plaintiff stated that he last worked in May 2002. Id. He explained that he last worked for Delphi, but they had sent him to school on Paid Educational Leave in Saginaw. Id. He stated that he went to the courses for one week, and prior to that he worked at Delphi in the end of January 2002. (TR 210). He stated that he stopped working at that point because they had no jobs available with his restrictions. Id.

2

He explained that he first worked for General Motors in 1978, then was transferred to Saginaw Steering in January 1999.  Id.  He reported having surgery in August 2001 and went back to work in December 2001 for approximately six weeks.  Id.  He reported that the last job he did was assembly from January 1999 until August 2001.  (TR 211).  He explained that the assembly position was actually part of a team of thirty jobs that rotate every half-hour.  Id.  He reported doing "small assembly work, screw, band ties, [and] wires."  Id.  He stated that he lifted up to twenty pounds and was on his feet most of the day.  Id.

Prior to that, Plaintiff reported being a machine operator for Delphi for approximately six months where he "loaded parts in the welding machine, inspected welds, maintain[ed] the machine[s]," was on his feet most of the days, and lifted up to fifty pounds.  (TR 211-12).  Further, from 1978 until 1999 he reported being a gun welder a "majority of the time," lifting up to fifty pounds, and also on his feet most of the day.  (TR 212).  He reported working part-time as a self-employed electrician repairing lights from 1995 to 1999, twenty to thirty hours a month and making about one thousand dollars a month.  (TR 212-13).  He explained that he mainly did service calls to residences and some businesses during this time.  (TR 213).

He explained that he cannot work because of his hands, the left hand being worse than the right.  Id.  He reported having "numbness, tingling, loss of strength, [and] loss of feeling."  (TR 214).  He stated that if he "grab[s] something, [he's] either going to drop it or . . . kill it."  Id.  He acknowledged having  surgery in August 2001 for his CTS, and again in June 2003 for his left hand specifically.  Id.  He stated that he has constant numbness and tingling, but he can hold a cup of coffee and slowly button a button.  Id.  He stated that he can also pick a coin up off a table with "some effort."  Id.

He also stated that he has difficulty lifting things because of his lower back problem.  Id.
He explained that if he is in a certain position or tries to lift something that is too heavy it bothers
his back.  Id.  However, he indicated that he sees a chiropractor and that "[i]t seems to help."  Id.
He stated that he has not had x-rays or MRI's done on his back in the last few years.  (TR 215).

He stated that he cannot lift anything without "feel[ing] it."  Id.  However, he stated that he
could lift ten pounds with two hands, but not twenty pounds.  (TR 215-16).  He reported that
standing does not bother him, but walking sometimes does.  (TR 216).  He stated it depends, but
sometimes it bothers his back and ankle.  Id.  Plaintiff explained that he has problems with his feet
if he stands all day.  (TR 215).  He indicated that at the end of the day his ankles will swell, but it
is not gout.  Id.  He stated that it has been suggested he wear supportive socks to increase the
circulation to his feet.  Id.  He stated that he is currently treating with Dr. Weiss and Dr. Thomas,
but he is not on any prescription medication.  Id.

He stated that he does not have problems sitting, but has problems bending over because of
his back and feet.  (TR 216).  He states that he has pain and discomfort if he reaches above his
shoulders.  Id.  He stated that he does not know of any specific problems with his shoulders.  Id.  He
stated that he does not have any problems climbing stairs.  Id.

Plaintiff described his daily activities.  (TR 217-18).  He stated that he is a "housewife."  Id.
He stated that he puts the dog out in the morning, does some laundry, showers, sometimes loads the
dishwasher, but his daughter usually takes care of the dishes.  Id.  He reported that he occasionally
cooks, but never vacuums or sweeps.  Id.  He stated that he puts the garbage in his garage, but his
son takes it out to the side of the road.  Id.  He stated that he does not do any yard work, but still

4

drives.  Id.  He stated that he is able to take care of his personal grooming, and he occasionally grocery shops but only carries the light grocery bags.  (TR 217-18).

Plaintiff testified that he occasionally tries to fish.  (TR 217).  He reported that he "just sit[s] there and [has] a couple beers, [] drop[s] a pole over a dock," but usually does not catch anything. (TR 218).  He stated that he goes fishing "about once a month."  Id.

He stated that he has problems writing because his hands cramp up quickly.  Id.  He stated that he was able to fill out the forms for SSA, but he does not remember how long it took him to complete same.  (TR 218-19).  He reported that although he stated earlier that he can hold a cup of coffee, he stated "if I don't drop it, I don't hang onto it very long."  (TR 218).

Plaintiff testified that he has a terrible time sleeping.  (TR 219).  He explained that his main complaint prior to surgery was a need to get up at night to "shake [his] hands out" and "walk around or do something."  Id.  He stated that he is still having those problems sleeping post surgery.  Id. He stated that he takes a couple two hour naps each day.  Id.

### B.  **MEDICAL EVIDENCE**

The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

### C.  **VOCATIONAL EXPERT'S TESTIMONY**

Ann Tremblay, a vocational expert [VE], testified at the hearing.  (TR 219-24).  She classified Plaintiff's past work as an assembler as light and unskilled; as a machine operator as medium and unskilled; as a spot-welder as medium and unskilled; and as an electrician as light and semi-skilled. (TR 221).  The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's

---

[2]See Subpart E, supra.

age, education, and work experience possessed the residual functional capacity [RFC] for jobs "with the followings limitations[:] [t]he individual can lift, carry, push and pull up to 20 pounds occasionally and 10 frequently. The individual can occasionally perform forceful gripping with the hands. No use of vibratory tools." Id.

The VE testified that Plaintiff could not return to his past relevant work under such restrictions. Id. However, the VE testified that such a claimant could perform other light and unskilled work such as: press operator, reduced range, 4,000 positions; inspector, reduced range, 7,000 positions; and messenger, 3,800 positions. (TR 222). The ALJ added a restriction of "no more than occasional fine manipulation with the hands." Id. The VE stated that the additional restriction would not affect the aforementioned positions. Id.

The ALJ then asked whether "lower[ing] the lift, carry and the push, pull limit to no more than 10 pounds occasionally and five pounds frequently, would [] affect those jobs." Id. The VE indicated that it would eliminate the jobs under the light and unskilled category, but there would still be the following sedentary and unskilled positions available to such a claimant: security monitor, 2,100 positions; order clerk checker, 5,000 positions; and inspector, 2,200 positions. Id. The ALJ then added the restriction of "no firm, forceful gripping and no fine manipulation." (TR 223). The VE testified that although such a restriction would eliminate the inspector position, it would not affect the other sedentary and unskilled positions. Id. The VE further testified that absences of three work days per month would eliminate all competitive employment. Id.

Plaintiff's counsel then questioned the VE. (TR 223-24). Counsel asked whether added "limitation[s] of no gross or fine manipulation, no handle, finger, feel, grip or grasp and no fine manipulation, would [] have an effect on the positions." (TR 223). The VE testified that such limitations would eliminate the positions listed. Id. Counsel then asked whether the need "to nap

6

once per day up to anywhere from one to two hours during the working day, not during the normal breaking time, would that eliminate work?" Id.   The VE answered in the affirmative.  (TR 224).

### D.    ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "[t]he medical evidence indicates that the claimant has bilateral carpal tunnel syndrome, with history of release; and bilateral ulnar mononeuropathy."  (TR 22, 25).  The ALJ  found that although these impairments are "severe," he does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. Id.  The ALJ found Plaintiff's "allegations regarding his limitations are credible to the extent that they are consistent with the residual functional capacity assessed."  (TR 23, quoted from 25).  He determined that Plaintiff had the RFC to perform a limited range of sedentary work.  (TR 22, 25).  Therefore, the ALJ concluded that Plaintiff is not eligible for disability.  (TR 26).

### E.    ANALYSIS

Plaintiff advances two claims in his Motion for Summary Judgment.  His Motion argues that the ALJ's decision is not supported by substantial record evidence because:  (1) the ALJ failed to properly evaluate his credibility; (2)  the ALJ failed to accurately portray Plaintiff limitations within a hypothetical to the VE; and (3) the ALJ failed to review evidence regarding Plaintiff's lower

extremity problems.[3]  In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[4]  The matter is now ready for decision.

### 1.   **Standard of Review**

The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g) (1997).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished).  Applying these standards, I will analyze each of Plaintiff's claims.

---

[3]Plaintiff's Motion for Summary Judgment and Brief filed May 13, 2005 (hereinafter "Plaintiff's Brief"), at pages 7-15.

[4]Defendant's Motion for Summary Judgment and Brief filed July 12, 2005 (hereinafter "Defendant's Brief"), at pages 4-9.

### a.      Credibility

Plaintiff argues that the ALJ erred in assessing his credibility.[5]  Specifically, Plaintiff alleges that the ALJ's evaluation of his need to nap during the day is in error.[6]  In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so then, 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.  McCoy on Behalf of McCoy v. Chater,  81 F.3d 44, 47 (6th Cir. 1995) (quoting Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 117 (6th Cir.1994) (citing Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991) and (quoting Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 853 (6th Cir.1986)).  In order to determine disability based on subjective complaints, we look to 20 CFR § 404.1529(c)(3):

> When determining credibility, in addition to the objective medical evidence, the ALJ must also consider:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

---

[5]Plaintiff's Brief at pages 7-11.

[6]Plaintiff's Brief at pages 10-11.

9

"However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."   20 C.F.R.§ 404.1529(c)(2).   Further, as Social Security Ruling (SSR) 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  See also, Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, *4 (E.D. Mich., Aug. 3, 2004) (slip copy).

In the present case, the ALJ stated that

[t]he claimant is currently undergoing no treatment for his complaints and takes no medication according to his testimony.  The limitations he describes in his testimony are compatible with the residual functional capacity assessed, except for his alleged need to nap for up to four hours daily.  While the claimant could certainly take one of the two naps he describes in the evening after the workday, it is unlikely jobs could accommodate a mid-day nap of one to two hours during the work day.  However, the undersigned is not persuaded that these naps would be needed if the claimant sought medical advice on aid in sleeping for longer periods at night.  He has rejected the suggestion of bracing, finding it uncomfortable, but there are various medications that might be helpful in this regard.

The claimant's daily activities are consistent with the residual functional capacity described.  He is able to drive, shop for groceries, cook, do light housework and play cards (Exhibit 4E, 5E and testimony).

(TR 23).

Plaintiff argues that the VE testified that the need for naps one to two hours each day would preclude work and the ALJ discounted the need of naps on insufficient bases.[7]  Namely, Plaintiff argues that the ALJ discounted the testimony that Plaintiff "rejected wearing braces finding them

_____

[7]Plaintiff's Brief at page 10.

10

uncomfortable."[8]   Further, Plaintiff argues that the ALJ failed to evaluate Dr. Weiss' note in December 5, 2002, where he stated that Plaintiff "is only getting 3-4 hours of sleep a night.  He is awake multiple times a night.  His hands fall asleep even with the splints on."[9]  (TR 148).  Further, almost a year later, in October 2003, Dr. Weiss noted Plaintiff "wears the cock up splints at night and states he can't sleep with all this 'garbage' on and is discouraged."  (TR 154).  Plaintiff concludes that there is "no support for the ALJ's conclusion, discounting Mr. O'Connor's testimony/credibility regarding the need to nap."[10]

The undersigned agrees with Plaintiff for slightly different reasons.  The ALJ seems to argue that if Plaintiff followed his prescribed treatment, namely, the use of sleeping aids, he would not be disabled.  (See TR 23).

> The regulation which discusses a claimant's responsibility to follow prescribed treatment is 20 C.F.R. § 404.1530, which states in pertinent part:
> § 404.1530 NEED TO FOLLOW PRESCRIBED TREATMENT. (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.
> (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.
> (c) Acceptable reasons for failure to follow prescribed treatment.

Fraley v. Sec'y of Health and Human Servs.,  733 F.2d 437, 440 (6th Cir. 1984).  The regulation goes on to describe examples of failure to follow prescribed treatments.

The ALJ is not a physician.  Although an ALJ is to weigh the evidence, "[a]n ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."  Lenon v. Apfel, 191 F.Supp.2d 968, 977 (W.D.Tenn. 2001) (citing Clifford

---

[8]Plaintiff's Brief at page 10.

[9]Plaintiff's Brief at pages 10-11.

[10]Plaintiff's Brief at page 11.

v. Apfel, 227 F.3d 863, 870 (7th Cir.2000); Sigler v. Secretary of Health and Human Servs., 892
F.Supp. 183, 187-88 (E.D. Mich. 1995)).  Plaintiff's treatment notes indicate that his physician was
aware of his inability to sleep through the night.  (TR 108, 110, 113, 126, 145-46, 148, 154, 157,
159-61, 176, 178).  There is no evidence in the record suggesting sleeping aids for Plaintiff's
documented sleeping problems.  Therefore, it was inappropriate for the ALJ to suggest same.

Therefore, the ALJ improperly considered Plaintiff's credibility.  Although, the "ALJ's
findings based on the credibility of the applicant are to be accorded great weight and deference," and
should not be disturbed, such is not the case here.  Walters v. Comm'r of Soc. Sec., 127 F.3d 525,
531 (6th Cir.1997) (citation omitted).  Therefore, the case should be remanded for a reassessment
of Plaintiff's credibility regarding his need to nap.

### b.    Hypothetical

Plaintiff argues that the ALJ's RFC hypothetical failed to accurately portray Plaintiff's
limitations.[11]   Recently, the Sixth Circuit has clarified what a hypothetical should include:

> In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical
> question need only reference all of a claimant's limitations, without reference to the
> claimant's medical conditions.  Foster, 279 F.3d at 356.  In Varley v. Sec'y of Health
> and Human Servs., 820 F.2d 777 (6th Cir. 1987), a case cited in Howard, we likewise
> determined that a vocational expert need only "take[ ] into account plaintiff's
> limitations."  Varley, 820 F.2d at 780.

Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004).  "It is well established that an ALJ
may pose hypothetical questions to a vocational expert and is required to incorporate only those
limitations accepted as credible by the finder of fact."  Casey v. Sec'y of Health and Human Servs.,
987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted).

---

[11]Plaintiff's Brief at pages 12-15.

As in <u>Maziarz v. Sec'y of Health & Human Servs.</u>, 837 F.2d 240, 247 (6th Cir. 1987),

> [t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.

<u>See also</u>, <u>Stanley v. Sec'y of Health and Human Servs.</u>, 39 F.3d 115, 118-19 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." (citation omitted)).

It is not clear what limitations Plaintiff asserts were not part of the hypothetical to the VE. He reiterates medical testimony and asserts "that the limitations to 'never perform firm or forceful gripping with either hand' is the same as saying "no gross manipulation." However, the ALJ's final hypothetical included "no firm, forceful gripping and no fine manipulation." (TR 23). The VE testified that there were still 7,100 positions that such a claimant was capable to perform. <u>Id.</u>

Plaintiff fails to develop his argument further. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to. . . put flesh on its bones." <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Therefore, Plaintiff's argument regarding an improper hypothetical is without merit.

### c.   Additional Evidence

Lastly, Plaintiff asserts that the ALJ did not properly evaluate his lower extremity complaints because they were sent shortly before the ALJ issued his decision.[12]  First, it is noted that at the

---

[12]Plaintiff's Brief at page 14.

hearing, the ALJ asked whether counsel was "aware of any medical records relevant to [Plaintiff's]

condition that [were] not in the file." (TR 206). Plaintiff's Counsel answered in the negative. Id.

Second, Plaintiff argues that the records constitute additional evidence under 42 U.S.C. §

405(g). While the ALJ presumably did not review this evidence as noted by his comments that "the

record does not reflect evaluation or treatment for these conditions," the Sixth Circuit has held in

similar situations that the Court does not have to review additional evidence not reviewed by the ALJ

unless good cause has been shown and the new evidence is material. Cline v. Comm'r of Social Sec.,

96 F.3d 146, 148 (6th Cir. 1996). In Cline, it was the claimant's

> primary argument [] that because the Appeals Council considered his new psychiatric
> evidence, the district court was required to do so as well. He is mistaken. In Cotton
> v. Sullivan, 2 F.3d 692, 695-96 (6th Cir.1993), this court decided a case very much like
> Cline's, holding that where the Appeals Council considers new evidence but declines
> to review a claimant's application for disability insurance benefits on the merits, the
> district court cannot consider that new evidence in deciding whether to uphold, modify,
> or reverse the ALJ's decision. The district court can, however, remand the case for
> further administrative proceedings in light of the evidence, if a claimant shows that the
> evidence is new and material, and that there was good cause for not presenting it in the
> prior proceeding. Id. at 696.

Id.

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure

to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster v. Halter,

279 F.3d 348, 357 (6th Cir. 2001) (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551,

554 (1984) (per curiam). "In order for the claimant to satisfy his burden of proof as to materiality,

he must demonstrate that there was a reasonable probability that the Secretary would have reached

a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y

of Health and Human Servs., 865 F.2d 709, 711 (6th Cir.1988) (citing Carroll v. Califano, 619 F.2d

1157, 1162 (6th Cir.1980)).

Additionally, Plaintiff has to establish "newness" pursuant to <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 626 (1990) (a sixth sentence remand is only "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding"); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 925 n.5 (6th Cir. 1990). Plaintiff fails to argue any of the aforementioned factors with any substance.[13]

## 2.    Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." <u>Faucher v. Sec. of Health & Human Servs.</u>, 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." <u>Id.</u> (citing <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985)).

Unfortunately, the ALJ's adverse decision was deprived of substantial evidentiary support because he improperly assessed Plaintiff's credibility regarding a need to nap in proposing use of sleeping aids. However, evidence in the record indicates that Plaintiff may not have a need to nap at all. On August 14, 2002, Plaintiff indicated that he wakes up every three and a half to four hours, but indicated that he takes no naps. (TR 75). Further, daily activity sheets completed by Plaintiff three months later do not indicate that he took any naps. (TR 87). However, this is not consistent with his testimony on March 26, 2004. (TR 219). It is not for the undersigned to assess credibility

---

[13]<u>See</u> Plaintiff's Brief at pages 14-15.

regarding the Plaintiff's inconsistences.  Therefore, the record does not overwhelmingly support a finding of disability on the basis of a need to nap.  Thus, a remand for benefits would be premature.

## III.   <u>CONCLUSION</u>

For the reasons stated, I recommend that the Court **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case for proceedings consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals.  <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

<u>S/Wallace Capel, Jr. </u>
**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**Date:**   <u> November 29, 2005 </u>

16

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Janet L. Parker, Assistant United States Attorney, 101 First Street, Suite 200, Flint, Michigan 48708, and Mikel E. Lupisella, 1121 N. Michigan Avenue, Saginaw, Michigan 48602.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):  Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

s/James P. Peltier
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail: pete_peltier@mied.uscourts.gov

17